PEOPLE v. ROAT.

1. CRIMINAL LAW—ADVERSE WITNESSES—LEADING QUESTIONS.

The general manager of a store from which goods were stolen may, upon a prosecution for the larceny, be asked leading questions by the prosecuting attorney, as an adverse witness, to elicit the fact that he received a sum of money for the stolen goods, and withdrew the complaint originally filed by him.

2. SAME.

The connection of respondent with the payment of the money may be shown by other witnesses.

3. SAME—IDENTIFICATION OF STOLEN GOODS—EXHIBITION TO JURY.

Where, upon a prosecution for larceny, it appears that certain knives were among the goods stolen, and that knives similar to those taken were subsequently found upon the premises of respondent, who acted in a suspicious manner, it is proper to permit the jury to see the knives so found, although they are not positively identified by the owner of the goods, who is apparently an unwilling witness for the prosecution.

4. SAME — EXAMINATION OF WITNESSES — LEADING AND IMPUDENT QUESTIONS.

The fact that the prosecuting attorney asks leading and impudent questions of a witness called by him, but shown to be adverse, is not ground for reversal.

5. SAME — REMARKS OF PROSECUTOR — EXCEPTIONS — MANNER OF NOTING.

Exceptions to the remarks of the prosecuting attorney, noted.

by the stenographer in response to nods of respondent's counsel, without the court or the prosecutor being apprised of them, cannot be considered on appeal.

6. SAME—HARMLESS ERROR.
   While the prosecuting attorney has no right to state to the jury, in the course of the argument, his recollection of a witness' testimony in the justice's court, his reference to such testimony upon an immaterial point, which would be unlikely to affect the verdict, will not require a reversal.

7. TRIAL—INSTRUCTIONS—QUOTATION OF TESTIMONY.
   Error, if any, in quoting in the charge the testimony of a witness, is harmless, where the testimony quoted relates to matters not in dispute.

8. CRIMINAL LAW — AMENDMENT OF INFORMATION — CLERICAL OMISSION.
   It is competent for the court to permit an information to be amended upon a motion to set aside the verdict, so as to cure the clerical omission of the clerk to sign the jurat.

9. SAME—SPECIAL QUESTIONS—VERDICT.
   Respondent is not entitled to have special questions submitted to the jury, as any limitation upon the right of the jury to find a general verdict in criminal cases is against the policy of the law.

Exceptions before judgment from Genesee; Wisner, J. Submitted June 16, 1898. Decided July 12, 1898.

David Roat was convicted of breaking and entering a store, not adjoining to nor occupied with a dwelling, with intent to commit larceny. Affirmed.

*Johnson & Stevens* and *Black & Brown*, for appellant.

*Fred W. Brennan*, Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted of the offense of breaking and entering a store, not adjoining to nor occupied with a dwelling, with intent to commit larceny. Upon the trial there was testimony tending to show that among the articles taken from the store on the occasion of the breaking were some butcher knives, and that similar

knives were subsequently found upon the premises of the defendant. A complaint was made against him by one Baxter, who was the manager of the store, which was afterwards withdrawn. The officer who made the arrest in this case testified that, when he demanded admittance to his house, the defendant for a time refused to admit him, but finally said he would do so when he got dressed. After a time he was admitted, but could not readily find the defendant, and, after a somewhat protracted search, was told by his wife that he had got so far away, by that time, that he would not get him. Finally he removed an oil cloth from the floor, and discovered a trapdoor, beneath which he found the prisoner. After stating the charge upon which he was arrested to the defendant, he said that he "supposed he would not be bothered for that again, for he supposed it was fixed up;" and that "they had ruined him, and had got all that he had in the world, and that it had cost him $2,000 already. All they would get now was his body, and they could have that if they wanted it."

To prove the charge, the prosecutor called Baxter, the manager, who testified to the circumstances showing the breaking and entering, and the interference with the property contained in the store. He did not identify the knives alleged to have been found at the defendant's premises with positiveness. Upon the claim that he was an adverse witness, the prosecutor was allowed to ask direct questions, and showed that he received $400 or $500 as pay for the stolen goods, and that he withdrew the complaint; that he afterwards took the money back. He was also examined in relation to his statements in regard to the identity of the knives when they were discovered. It was within the discretion of the trial judge to allow the prosecutor to show by the witness Baxter, through leading questions, his conduct in receiving money and withdrawing the first complaint. He was not permitted to state the name of the person who paid it to him, and his supposition that it came from the defendant was stricken out.

The testimony of the sheriff tended to connect the receipt of the money with the defendant, and made Baxter's testimony material. The witness was asked if he did not say, in the presence of one Garner, that the knives came from the store, and had his marks upon them; but the question does not appear to have been answered as thus put, and later, when asked if he did not say this to Garner in the presence of the defendant, he said that he did not remember. We do not discover that the record shows that all of the testimony is included, but, if it did, we should think that no error was committed in allowing the jury to see the knives found upon defendant's premises.

Among the witnesses called by the prosecutor was one Dickinson, a blacksmith, who was working for the defendant at the time of the burglary. He testified that the defendant came home about 12 o'clock that night, but that he had been asleep, and did not positively know the time, and, after being confronted with and allowed to read his deposition upon the examination, admitted that in the justice's court he testified that it might have been 4 o'clock and it might have been 12. It appeared, also, that he was subpœnaed at Holland, and furnished with a ticket, upon a telegram from the sheriff, to enable him to attend the trial; that he met the defendant at Durand, and was accompanied by him to Flint, and that they went from the train to the office of the defendant's counsel, and from there to the defendant's house, where he remained that night; that he did not see the sheriff at the depot, but got off from the train with the defendant at the bridge. He was examined quite closely by the prosecutor. The only suggestion of error made in the brief upon Dickinson's examination is that the court permitted the prosecutor to cross-examine him, and the witness to answer numerous leading and impudent questions. Leading questions are usually within the discretion of the circuit judge, and mere impudence to a witness is not a ground for reversal.

Counsel assign error upon the remarks of the prosecu-

ting attorney in his address to the jury. We find nothing that would justify a reversal of the judgment. Again, if the statement in the prosecutor's brief is true, viz., that neither the court nor the prosecutor was apprised of the exceptions, which were. noted by the stenographer in response to nods of the counsel for the defendant, which does not seem to be contradicted, the questions should not be considered. The office of exceptions should be to apprise the court of alleged errors, with a view to their correction, when possible; and, with the exception of cases where errors are alleged upon the charge, exceptions must be brought to the attention of court and counsel at the time the alleged error is committed.

Statement No. 18 was not a proper one for the prosecutor to make. His recollection of what Garner testified in the justice's court was not proper evidence, but it was an immaterial point, inasmuch as no attempt appears to have been made to contradict Garner's statement that his attention had not been called to the number of knives at the examination. The subject was not very material, in any view of the case, and could hardly have affected the verdict. The court was careful to instruct the jury to disregard statements not justified by the evidence.

Error is assigned upon the refusal of the judge to give several of the defendant's requests to charge, but we think the general charge sufficiently covered the subjects.

The quotation of the testimony of a witness in relation to the situation of the premises, if erroneous (which we do not assert), was not injurious, as, under the testimony contained in the record, there was no dispute as to the store not being adjoining to or occupied with a dwelling house.

We are of the opinion that it was competent for the court to permit the information to be amended, upon the motion to set aside the verdict, by permitting the clerk to sign the jurat, which the proof showed his failure to do earlier was a clerical omission.

Error is assigned upon the refusal of the trial court to submit the following special question to the jury, viz.:

"At what hour do you find that the breaking and entering of the store occurred, if * * * at all?" Any limitation upon the right of the jury to find a general verdict in criminal cases is against the policy of the law, and, as intimated in the case of *People* v. *Marion*, 29 Mich. 40, the right to require answers to special questions in criminal cases would be revolutionary. Cooley, Const. Lim. (6th Ed.) 393 *et seq.*

We have examined the numerous assignments of error, and think it unnecessary to discuss others.

The judgment is affirmed.

The other Justices concurred.