THE RIO GRANDE WESTERN RAILWAY COM-
PANY, A Corporation, Appellant, v. THE UTAH
NURSERY COMPANY, A Corporation, and WIL-
LIAM SMITH, Respondents.

No. 1384.     (70 Pac. 859.)

1. **Evidence: Instructions: Invading Province of Jury.**
   Instructions to the jury to "weigh the evidence carefully, and con-
   sider it all .together.  You should not pick out any particular
   fact in evidence, or any particular statement of any witness,
   and give it undue weight.  You should give such weight to
   inferences from the facts proven as in fairness you think they
   are entitled.  If you believe any witness on either side of this
   case has willfully testified falsely on any material matter, then
   you have a right to disregard the entire testimony of such wit-
   ness, unless the witness is corroborated by other reliable evi-
   dence"—were not erroneous as invading the province of the
   jury.

2. **Evidence: Leading Questions: When Proper.**
   Where both court and counsel were uncertain as to the meaning
   of statements made by a witness, it was not error to allow
   counsel to propound a leading question to his own witness for
   the purpose of getting a clearer comprehension of the facts, and
   especially so where it did not appear that the other party was
   prejudiced.

3. **Same: Discretionary.**
   When, and under what circumstances, a leading question may be
   put is a matter resting in the sound discretion of the court,
   and not a matter which can be assigned for error.

4. **Same: When Reviewed.**
   Unless it affirmatively appears from the record that the ruling of
   the court was in fact injurious, or that in all probability it
   would injuriously affect the rights of the objecting party, such
   ruling will not be reviewed by the court on appeal.

5. **Same: Exceptions, When Considered.**
   Exceptions to a question to a witness can not be considered which
   do not show how the question was answered, and that the an-
   swer was in some way unfavorable to the party excepting.

(Decided December 9, 1902.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. Charles W. Morse,* Judge.

Action by a railway company to condemn a right of
way across the property of the defendant company. From a
judgment awarding the defendant company $9,678 damages,
the plaintiff appealed.

AFFIRMED.

*Messrs. Bennett, Sutherland, Van Cott & Allison,* for
appellant.

*Messrs. Richards & Varian,* for respondent company.

### STATEMENT OF FACTS.

This is an action by the Rio Grande Western Railway
Company to condemn a right of way across the property of
the defendant Utah Nursery Company. The latter owned,
at the commencement of this suit, about 71 acres of land,
situate in Salt Lake county, about four and one-half miles
by the way the road runs from the southeast corner of the
Temple Block in Salt Lake City. The street car system had
a line running along the west line of the nursery company's
land, and also another system a short distance from the
premises, each with a twenty-minute service daily. The
property was used exclusively for nursery purposes, although
some years previously the owners, in the hope that it might
become desirable for residential purposes, had laid out some
streets and avenues on it, and planted shade trees along them.
There was sufficient water to irrigate the lands, and also for
domestic use if occupied by residences. The situation of the
property is such that, so far as present indications may be
relied on, the trend of residences would probably be in its

direction, and it is in consequence adapted and might be used for residences in the near future. As to the last the evidence is conflicting. On the day the railroad took possession of the premises for its right of way there were a large number of nursery buds, called "dormant buds," and some trees, growing thereon, which had to be removed, and some were destroyed in making the right of way. A large number of the buds were bought by Martin Christopherson, one of defendants' witnesses. The railroad right of way cuts the property into two pieces, leaving about one-third of it to the north, and two-thirds of it to the south of the track. On the conclusion of the trial a verdict was rendered assessing defendants' damages at $9,678.92. Plaintiff moved the court for a new trial, which was denied, and from that order and the judgment subsequently rendered upon the verdict the plaintiff appeals.

ROLAPP, District Judge, after stating the facts, delivered the opinion of the court.

In this case there are four distinct errors alleged by appellant upon which it relies for a reversal of the judgment. Two of these errors relate to the admission of evidence, and the remainder to the instructions given by the court. The instructions complained of contain the following language: "Instruction 16. You should weigh the evidence carefully, and consider it all together. You should not pick out any particular fact in evidence, or any particular statement of any witness, and give it undue weight. You should give such weight to inferences from the facts proven as in fairness you think they are entitled." "Instruction 19. If you believe any witness on either side of this case has willfully testified falsely on any material matter, then you have a right to disregard the entire testimony of such witness, unless the witness is corroborated by other reliable evidence." It is insisted by appellant that these instructions

in effect invade the province of the jury. In this we can not concur. Apart from the fact that ample precedents exist for the giving of such instructions in almost every conceivable case, it would be difficult to discover any better language in which fairly to convey to the jury the methods usually adopted by trained investigators of testimony in determining the weight and value of statements made by sworn witnesses. The giving of such advisory instructions does not violate the inhibition against the court instructing upon matters of fact. Jurors have a right to expect from an impartial court such aid as will guide them in properly considering the law and the facts presented to them. In fact the very object of having the court give instructions to a jury is to explain the issues, state the law applicable thereto, and suggest the best manner of applying the sworn testimony and the law toward a fair and proper determination of the issues. The court in this case having done its duty in this regard, of course no error was committed.

Counsel for appellant further insist that the trial court erroneously permitted the following question to be propounded to one of respondents witnesses: "You say that what you mean is, if anybody wanted those trees at that particular season, they could go and make a bargain for them and get them; but there was no sale in the market, and only sales—. This is what you say, as I understand you, except as an individual might make a purchase for a certain quantity of stock if he happened to want to purchase it?" The only objection made to this question was that it was leading, and therefore not competent. From a careful examination of the record, we see nothing that indicates an abuse of discretion in permitting this question to be answered. Both court and counsel were uncertain as to the exact meaning of previous statements made by the witness, and the question was propounded by the consent of the court for the express purpose of getting a clearer comprehension of the facts theretofore testified to by him. Under such circumstances this court will not interfere, especially as the record

fails to disclose any resulting prejudice to appellant.   "When, and under what circumstances, a leading question may be put, is a matter resting in the sound discretion of the court, and not a matter which can be assigned for error." Greenl., Ev., sec. 435; 2 Taylor, Ev., sec. 1198; Dinsmore v. State (Neb.), 85 N. W. 445; People v. Roat, 117 Mich. 578, 76 N. W. 91.

The last assignment of error relied upon by the appellant is the overruling by the court of an objection to a question propounded to one of appellant's witnesses as to the market value for residential or platting purposes of the land sought to be condemned.   Nine witnesses for the defendants testified upon the question of the value of the land, and that the entire tract of land was adapted and might reasonably be expected in the immediate future to be available for platted and residential purposes; that it had a market value not only for farming or nursery purposes, but for the more valuable use. Some of the witnesses who testified upon this question for the plaintiff also testified that the land at that time was so adapted and available, and some of them testified that it had at that time a market value for such purposes.   It further appears that each of defendants' nine witnesses were asked the following question, in substance:   "Taking into consideration the situation of the property as it was on October 8, 1900, and before the construction and operation of the railroad over a part of it, its topography and relation to contiguous property, its water supply derived from springs rising in ponds on the land, and its situation relatively to the street car service, what, on the eighth day of October, 1900, in your opinion, was the market value of the defendants' land for residental or platting purposes?"   Plaintiff objected to the question as incompetent and irrelevant to ask for the market value for a particular purpose.   The plaintiff's objection was overruled by the court, and plaintiff duly excepted.   Apart from the fact that the question was answered, the record fails to disclose what the answer was.   It seems

that thereupon the counsel for defendants restated the question substantially as above, except that the concluding form was: "What, in your opinion, was the market value of defendants' premises, if any, for the most valuable use to which it was adapted or available, on the eighth day of October, 1900 ?" which question was not objected to, and was answered. The defendants also introduced other evidence tending to support the verdict and the issues in the case. This, in substance, constitutes the entire record, so far as this question is concerned. We are not informed what the answers were to either question, and can not, therefore, determine whether the propounding of the objectionable question was in fact prejudicial to the appellant. Unless it affirmatively appears from the record that the ruling of the court was in fact injurious, or that in all probability it would injuriously affect the rights of the objecting party, such ruling will not be reviewed by this court on appeal. "Where there is not enough in the bill of exceptions to justify the inference that the ruling was injurious, or probably injurious, error is not made apparent." Elliott, App. Proc., sec. 812, p. 765, and cases cited. Exceptions to a question to a witness can not be considered which do not show how the question was answered, and that the answer was in some way unfavorable to the party excepting. Kershaw v. Wright, 115 Mass. 361-366; Cecconi v. Rodden, 147 Mass. 164, 16 N. E. 749; Culbertson v. Stanley, 6 Blackf. 67.

There appearing no reversible errors in the record, the judgment of the lower court is affirmed, with costs.

BASKIN and BARTCH, JJ., concur.