PEOPLE *v.* NICHOLS.

1. INDICTMENT AND INFORMATION—AMENDMENT—TIME—PLEADING.
   An information which charges an offense under videlicet on August 18th, may be properly amended by changing the date to July 18th. 3 Comp. Laws, §§ 11919, 11936.

2. RAPE — STATUTORY OFFENSE — ELECTION OF OFFENSE RELIED ON.
   Evidence of a subsequent offense is not admissible after the introduction of evidence fixing the time and offense relied on in a prosecution for statutory rape.

3. SAME—EVIDENCE—TIME OF OFFENSE—INFORMATION.
   Where the information charged respondent with an offense on, "to wit, July 18th," and the prosecuting attorney in his opening statement announced that he relied on an act committed about a week prior to July 18th, evidence of an offense committed two weeks before that date was admissible.

4. SAME—EVIDENCE—PREVIOUS ACTS.
   Previous or subsequent acts of intercourse are admissible to corroborate the evidence of the offense charged, but not to sustain a conviction for a separate offense.

5. SAME—EVIDENCE—CONFESSIONS AND ADMISSIONS.

The written admissions of a girl of thirteen years of age, as to statutory offenses committed by the respondent, are not admissible as substantive proof for the purpose of convicting the accused, and are only competent to impeach the witness.

6. SAME—TRIAL—INSTRUCTIONS.

The jury should be instructed, if so requested by respondent, that to warrant a verdict of guilty the jurors must unanimously find that the accused committed the act as testified to.

7. CRIMINAL LAW —ARGUMENT OF PROSECUTING ATTORNEY— IMPROPER COMMENT.

The statement in the argument of the prosecuting attorney upon his official oath that a certain witness testified truthfully, is a fatal error. *People* v. *Treat*, 77 Mich. 348 (43 N. W. 963).

Error to Calhoun; North, J. Submitted November 15, 1909. (Docket No. 167.) Decided December 30, 1909.

Jerome E. Nichols was convicted of statutory rape, and sentenced to imprisonment for not less than five nor more than fifteen years in the State prison at Jackson. Reversed.

*W. S. Powers*, for appellant.

*Howard W. Cavanagh*, Prosecuting Attorney, for the people.

HOOKER, J. The respondent appealed from a conviction of the offense of statutory rape upon a girl under the age of 16. The evidence offered by the people consisted of:

(1) The testimony of the girl, Marguerite La Parl.
(2) Testimony of persons who saw the parties in respondent's office.
(3) Testimony of an officer and the justice who took the complaint as to statements made by the girl.
(4) Certain writings containing statements regarding the relations of the parties, over the signature of the girl.

The questions raised relate to:

(1) The charge made against respondent, and the duty of election.

(2) The admissibility of the girl's extrajudicial statements.

(3) Exclusion of questions on cross-examination of the girl.

(4) The admissibility of certain affidavits made by the girl.

(5) The charge of the court in relation to extrajudicial statements.

(6) Remarks of prosecuting attorney.

The respondent was charged in the information with an offense committed on July 18th, though it was laid under a *videlicet;* the examining magistrate having bound defendant over on a charge of rape alleged to have been committed on that day. The information as originally drawn charged an offense on August 18th. A motion being made to quash the information for a variance, the court permitted the prosecutor to amend it to read July 18th. Error is assigned on this. We are of the opinion that the court did not err in denying the motion to quash and allowing the amendment. Sections 11919, 11936, 3 Comp. Laws; *Cole* v. *People*, 37 Mich. 544; *People* v. *Waller*, 70 Mich. 237 (38 N. W. 261); *People* v. *Hildebrand*, 71 Mich. 313 (38 N. W. 919); *People* v. *Perriman*, 72 Mich. 184 (40 N. W. 425); *People* v. *Price*, 74 Mich. 37 (41 N. W. 853); *People* v. *Hamilton*, 76 Mich. 212 (42 N. W. 1131); *People* v. *Roat*, 117 Mich. 578 (76 N. W. 91); *People* v. *Hoffmann*, 142 Mich. 531 (105 N. W. 838).

At the opening of the trial the prosecuting attorney announced that the offense relied on occurred about a week prior to the 18th of July. The girl, Marguerite La Parl, being sworn, testified that she worked in the office of the respondent, and that the last she did so was July 18th. Being asked whether at any time before that she had improper relations with respondent, she stated that she had one night when she went there after school, and before

she began working there. The witness being interrogated further, defendant's counsel objected, claiming that by offering the foregoing proof the prosecutor had fixed the time of the offense for which he sought conviction, and assigns error on the overruling of his objection. The witness was then allowed to testify to an act of sexual intercourse on an occasion when respondent placed her upon some pillows upon a stand in the corner of his back room, and apparently this was the occasion for which conviction was sought, and she stated that she thought it was about two weeks before July 18th. There was testimony in the case of intercourse, both before and after this occasion. The former was admissible, and the latter was not, provided, of course, that it was proper to treat this occasion as the instance for which respondent was on trial. The rule is settled in the case of *People* v. *Brown*, 142 Mich. 622 (106 N. W. 149). See, also, *People* v. *Jenness*, 5 Mich. 305.

Counsel urge, *first*, that the proof of the act in June was an election, and that, if not, the prosecutor's statement to the jury that he relied on an act that was committed about a week before July 18th must be considered as fixing the offense as of July 11th. We find no difficulty in holding that the act of two weeks before July 18th was sufficiently described in the information, inasmuch as the date of July 18th was preceded by the *videlicet*. The opening of the prosecutor should not be held to be an election to prove and rely on an offense committed on July 11th. He did not definitely fix the date.

The more serious question relates to the effect of the proof first offered relating to the act in June. If we must hold this to have constituted an election notwithstanding the fact that the prosecutor at once disavowed such election, and consistently claimed conviction for the later act, we must reverse the case:

(1) Because the proof of the later act was inadmissible.
(2) Because the jury were permitted to find a verdict of guilty based on the later transaction.

The claim of defendant's counsel is based on the opinion in the early case of *People* v. *Jenness,* 5 Mich. 305.

We insert the testimony of Marguerite La Parl, the first witness sworn, to show the exact situation. After the opening to the jury, which plainly indicated reliance upon the act about a week prior to July 18th, she testified that she went to work at defendant's office right after school let out and worked about four weeks. She continued as follows:

"*Q.* Now, Marguerite, do you remember the last day you worked there?

"*A.* Yes, sir.

"*Q.* Do you remember what day of the month it was?

"*A.* July 18th.

"*Q.* What day of the week?

"*A.* Saturday.

"*Q.* Now, at any time before that, had you had improper relations with Mr. Nichols?

"*A.* Yes, sir.

"*Q.* And when, before that, Marguerite, as near as you can tell?

"*A.* It was one night when I went there after school.

"*Q.* Was it before or after you began working there?

"*A.* Before. * * *

"*Q.* Did you at any time have such relations with Mr. Nichols?

"*Mr. Dennison:* I object to that question as irrelevant, incompetent, and immaterial. Counsel has asked this witness: 'Did you have improper relations, or did Mr. Nichols do anything to you?'

"*A.* Yes, one night when I was going to school.' Mr. Stewart has now fixed the time on which he seeks to get a conviction Any subsequent time is incompetent, immaterial, and irrelevant.

"*The Court:* I shall overrule the objection. He has indicated in his opening statement when he desires to fix it."

From what has been already said, it is apparent that, had the testimony first offered related to the later transaction, as the one relied on, proof of the former would have been competent, under the case already cited, as well as under *People* v. *Jenness,* and we are reluctant to hold

that a variation in the order of proof clearly competent should have the effect claimed for it. While the opinion in *People* v. *Jenness* at first blush may seem to hold just that, it is in our opinion clearly distinguishable. That was an incest case. The proof first offered related to an act committed on January 17th. Afterwards one or more acts were proved, against objection. The court said:

" It was not claimed by the prosecution, and could not legally be claimed, that it was competent to convict the defendant of more than one act under this information. But the prosecutor having the right to select among all the acts of the kind which he could prove to have been committed between the parties, within the period alluded to, and within the jurisdiction, any one of those acts, before evidence had been introduced, was as properly the act charged in the information as any other. In other words, until evidence of some such act had been given, the charge in the information was floating and contingent, aimed as much at one as another, and at no one act in particular; and it remained for the evidence to point the charge to the particular act intended. But when evidence had been introduced tending directly to the proof of one act, and for the purpose of procuring a conviction upon it, from that moment that particular act became the 'act charged.' What had, till then, been floating and contingent, had now become certain and fixed. The prosecutor had made his election, and could not elect again; nor could he be allowed to prove any other act of the kind as a substantive offense upon which a conviction might be had in the cause. The information could be used as a dragnet only till the first act had been entangled in its meshes; every other act must be allowed to escape this throw of the net, and thenceforward the evidence must be aimed at this act. If others of the same kind lie in the same range, they can only be noticed for a secondary purpose, as they may be connected with or bear upon this.

" The act at the Howard House being the first to which evidence was introduced, and the evidence bearing directly upon that act, became from that moment the only offense charged—the only offense the jury were to try, and to which their verdict of guilty or not guilty must relate. Such must have been the view taken by the recorder when

the evidence of previous acts of intercourse was admitted; as he admitted evidence of such acts 'not as substantive offenses, but in explanation and corroboration of the evidence of the act charged in the information.'

" But, after the evidence had been admitted for this purpose, the prosecuting attorney changed his ground, and claimed that the jury might select any one of the acts on which evidence had been given as the ground of their verdict."

In that case the prosecutor intended to rely upon the act of January 17th for a conviction when he offered the proof, and the case went to the jury upon several acts. In this case he did not, as the record clearly shows, for it was disavowed on the spot, and the proof was limited to the purpose for which it was clearly admissible. We are therefore of the opinion that there was no error in admitting proof of the later and all intervening transactions of similar character. It was not proper to admit proof of acts subsequently committed, however, if offered first by the prosecutor. We are of the opinion that a plain and sufficient election was made. There was testimony, however, regarding an act on July 18th. It was drawn out on the direct, and was improper.

We may remark here that the defendant was entitled to an instruction that to warrant a verdict of guilty the jurors must unanimously find that he committed the act testified to, as committed on the stand, if requested.

The record indicates that this girl was old in vice, though young in years. The prosecutor showed by her that she did not tell her parents, because " defendant told her not to, and that it would mean State's prison for him if she did." Thereupon the prosecutor was permitted to show that some time after the transaction an officer named Buckley, who had got wind of the matter, approached her parents about it, and had an interview with the girl, who admitted and signed a written statement of the facts. She subsequently went, or was taken, before a magistrate, and signed a second statement in relation to the affair. These writings and the testimony of the of-

ficer and justice got into the case. There is some dispute as to which party caused its introduction, and, as the cause must be reversed on another ground, it is enough to say that it was not competent evidence for the people, and could properly be used by the defendant only by way of impeachment. We do not find it necessary to determine its effect upon this trial for the reason stated, but indicate our understanding of the rule for the purposes of another trial, should one be had.

Complaint is made of the charge regarding the use to be made of the signed statements, in that the jury are said to have been instructed that they might consider them as corroborating the testimony of Marguerite La Parl. The exact question appears to be whether the court should not have limited the use of this proof to the determination of her truthfulness, and whether he did not go too far in saying that:

" I think I have already called your attention to the fact that certain statements of Marguerite La Parl are in evidence here, which have been reduced to writing. I now call your attention particularly to the return of the justice of the peace which was introduced as a part of the testimony here, and to which your attention has been repeatedly called. That testimony is not substantive proof; that is, it is not original and competent proof of the guilt of the accused. But you are to view the statements there, and to use them for this purpose only, namely, of its being either contradictory testimony relative to former statements of Marguerite La Parl, or corroborative testimony, and to assist you in construing her testimony as given here in court, and in determining its truth or untruth, to the extent that it will aid you as a piece of evidence for that purpose, and it is not primary proof of the offense charged."

We are satisfied that the learned circuit judge intended to limit the application of this testimony to the question of the girl's veracity, but fear that the jury may not have so understood it. Certainly, if they understood that it was to reinforce and corroborate her testimony as to the substantive facts, it was injurious.

Cunningham, a witness for the people, testified to observation of certain conduct of respondent and this girl in the former's office, that what he saw was from the opposite side of the street, and it tended to corroborate the statements of Miss La Parl. He said that on one occasion the prosecuting attorney was also there. Apparently the credibility of this witness was questioned in the course of the argument of defendant's counsel. This is the record [opinion of trial court]:

"So far as the prosecuting attorney is concerned, the only matter which approached an irregularity, in my judgment, and concerning which complaint was made or exception taken at the trial, was the following:

"'Mr. Stewart: I will say, however, upon my official oath, that I know when Mr. Cunningham told certain things upon the stand he told the truth.

"'Mr. Dennison: We object and take an exception to counsel for the people giving testimony before the jury that we cannot cross-examine him upon.

"'Mr. Stewart: I will say it again. I will say it again to you, gentlemen, that I did not have to take the stand here; but I say that I know that Mr. Cunningham was a truthful witness so far as some things were concerned.

"'Mr. Dennison: We take an exception to that.'

"The foregoing was provoked by certain heated remarks made to the jury by Mr. Hooper, one of the counsel for the defendant, who referred to certain testimony given by Mr. Cunningham but subsequently stricken from the record, and stated that in giving such testimony Cunningham had 'branded himself (Cunningham) a liar.' It appeared in the testimony that on one occasion the prosecutor was with Mr. Cunningham at the point where Mr. Cunningham claimed he observed certain things relative to which he testified, and the only fair import to be given to the remarks of the prosecutor is that as to some of these circumstances he had personal knowledge, and this appeared in the evidence. And, moreover, there was no dispute in the evidence as to Cunningham having been across the street from the defendant's office and having made certain observations; but his statement in this regard was corroborated by other testimony; and it was this to which the prosecutor's remarks referred, and to me

it seems beyond question that it was not in the least prejudicial to the rights of defendant.   I do not find the prosecutor made any remarks not justified by the testimony."

This was a fatal error.   It was practically the introduction of unsworn testimony corroborative of Cunningham. The case of *People* v. *Treat*, 77 Mich. 348 (43 N. W. 983), was a similar case.   In that case not only was the prosecutor instantly and severely rebuked by the trial judge in the presence of the jury, but all was done that could be done to counteract the effect of his statement. Yet this court, upon a record most convincingly showing defendant's guilt, felt constrained to say that injurious error had been committed, which the trial court was powerless to correct.   It is unnecessary to discuss the case further.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and MOORE, McALVAY, and BROOKE, JJ., concurred.