PEOPLE *v.* AYERS.

1. CRIMINAL LAW—IMPEACHMENT—EVIDENCE.

   For purposes of impeachment, in a prosecution for statutory rape, an affidavit of the complaining witness made as a basis of the warrant was admissible in evidence, but not for the purpose of substantive proof.

2. SAME—RAPE.

   While such testimony was not incompetent for the purpose of impeaching the witness, it was not sufficient to justify submitting the evidence to the jury without other proof of respondent's guilt, and her statement, made in the presence of the justice of the peace, after a previous trial, that she had testified to the truth, were hearsay and incompetent for the purpose of conviction.

Exceptions before sentence from Cass; Des Voignes, J. Submitted April 23, 1915. (Docket No. 120.) Decided June 7, 1915.

Oliver Ayers was convicted of rape. Reversed.

*Grant Fellows,* Attorney General, and *Otis Huff,* Prosecuting Attorney, for the people.

*C. M. Lyle* and *W. J. Barnard,* for defendant.

STONE, J. Respondent was charged with statutory rape, alleged to have been committed on April 27, 1911, in Penn township, Cass county, upon one Mabel Bowerman, a female child under the age of 16 years. Upon the first trial of the case it appeared that said Mabel Bowerman gave birth to an illegitimate child on January 22, 1912, and she testified that respondent was the father of this child, as the result of sexual intercourse with her which occurred "on the Underwood Farm in the house," where she was a member of the family of respondent, and had been for a num-

ber of years, although not legally adopted. The conviction of the respondent upon the first trial was reversed by this court. *People .v. Ayers,* 182 Mich. 241 (148 N. W. 383). After the first trial, the girl, Mabel, retracted her charge against respondent, and upon the second trial—which is now before us for review—she testified that respondent had never had sexual intercourse with her; that her testimony upon the first trial was false; "that she was scared into it;" and that one Charles Rogers was the father of her child. Upon the last trial of the case the people were permitted, against the objection and exception of respondent's counsel, to offer and read in evidence an affidavit as to the parentage of the child, made by the girl before the warrant was issued. Upon objection being made to this, the trial court said:

"Here is an affidavit, the basis of the warrant in this case, made by the girl, and it is either admissible or not. If it is not admissible, there is no case here; if it is admissible, why, it should go in. For that reason it may be received at this time, subject to your objection."

She was also interrogated and examined at length as to the testimony which she gave upon the former trial, and the same was read to her from the minutes of testimony taken by the official stenographer, and in some instances she testified that she did not remember her former testimony. The stenographer also testified to such former testimony from the transcript which was read to the jury. Upon objection being made as not proper matter of impeachment, the court said:

"Well, now, our court has held that where a person testifies that they don't remember, you have the right, if you are entitled to impeach at all, to impeach that because that is not a denial, or rather is not an admission; it is a denial in part and you have a right to impeach. The question I have ruled upon here—

that is, I am giving the prosecutor the right to show what was testified to in the former trial, not necessarily for the purpose of impeaching this girl, but for the jury to determine what was the truth in relation to what she stated before.

"*Respondent's Counsel:* That is the purpose of it, is it?

"*The Court:* And for the reasons given, and others that have been stated on the record, I think counsel may now interrogate the operator as to the transcript that he has made in this case purporting to be the testimony taken of the girl, Mabel, on a former trial. Without reading the questions, I think you have a right to refer from page so and so of exhibit so and so, and ask the witness if that was transcribed by him as reporter and if it was so testified at the former trial.

"*Respondent's Counsel:* We object to it on the ground that it is in violation of the United States Constitution, that the accused is entitled to be confronted with his witnesses; for the further reason that it is not substantive proof, and a transcript of this kind is not admissible.

"*The Court:* He may answer.

"(Exception for respondent.)"

The justice of the peace who issued the warrant was permitted to testify, over the objection and exception of respondent's counsel, that the same was incompetent and, no foundation being laid, was hearsay; that about a week after the first trial the girl, Mabel, came to his office, with her brother, and there stated, not in the presence of respondent, that upon the first trial she had "stuck to her story and that the attorneys on the other side tried to shake her, but she told the truth." The witness, Mabel, had not been interrogated as to this conversation, and no foundation had been laid to impeach. In admitting this testimony, the court said:

"Your objection would be good were it not for this fact: Subsequent to this trial, the complaining witness denied the truthfulness of her statement. It

was made the basis for a motion for a new trial. *
*  *  Now, anything that this girl said about the
time she made this recantal, or rescission, rather,
and all in connection with that, with reference to the
fact as to whether it was true or untrue, is a proper
subject for consideration here, now, in my opinion.
Otherwise there could be no examination, there could
be no trial in this case; and for that reason, gentle-
men, I will permit the answer to be made, as bearing
upon the fact of the truthfulness of the assertion as
to her first testimony, and as to the second."

Similar testimony was given by the brother of
Mabel as to what she said to the justice after the trial,
and received against the objection and exception of
respondent's counsel that the same was hearsay and
not proper impeachment. In admitting the testi-
mony, the court said:

"It is not for the purpose of impeachment. The
prosecutor misstates the proposition. The witness
testified in a certain suit to a certain state of fact.
The allegation still is upon the old suit that this de-
fendant was guilty of wrongdoing as charged there-
in, in that he is the father of this child. Now, then,
the statement made by the witness heretofore, and
what may be gathered in that connection now, may
go to the jury, not for the purpose of impeaching this
girl, but in arriving at what the truth is as to that
matter now. That is the purpose of it."

Upon exception being taken, the court said:

"Well, it stands on either branch, whether on that
suggested by the court or yours.

"*Respondent's Counsel:* We will add this further,
that it is not admissible as substantive evidence.

"*The Court:* Well, the Michigan cases that counsel
cites say that it is, and the court has ruled that it
may be received as bearing upon the fact of sub-
stantive proof and accounting for it. In this particu-
lar case it is evidence of fact for the jury to consider
upon the main fact.

"(To which ruling respondent's counsel excepted.)"

Upon the close of the people's case, respondent's counsel moved for a directed verdict upon the ground that there was no evidence or substantive proof offered of the commission of the offense in the case. This motion was denied, to which respondent's counsel excepted. Respondent's counsel also requested the court to charge the jury as follows:

"(1) That under the undisputed evidence in the case your verdict should be not guilty."

"(3) You are instructed that the girl, Mabel Bowerman, has been questioned by the prosecutor in relation to what she swore to on the former trial of this case, and said testimony has been offered in evidence together with an affidavit taken before Justice Donahoe, wherein she stated that Oliver Ayers, the respondent, had sexual intercourse with her; and I charge you that this testimony cannot be considered by you as tending to prove the offense charged, but only can be considered as bearing on the veracity of the girl, Mabel Bowerman. That testimony is not substantive proof, that is, it is not original and competent proof of the guilt of the accused; and, further, you have no right to consider it as testimony corroborative of substantive facts."

Neither of these requests was given, and the court charged the jury, among other things, as follows:

"The people further contend that the girl stated under oath to Justice Donahoe, and in this court upon a former trial, that Oliver Ayers did have intercourse with her in April, 1911, and begat her with the child born in January, 1912. It is the contention of the people that the girl now takes the witness stand and denies such intercourse, and denies what she stated upon the former trial in that relation. The people contend that, after the other trial was terminated, the defendant secured the possession of the girl, or at least she went to the home of this respondent, and thereby induced her to repudiate her former statement. The people further contend that at a later date, that is, while she was in the employ of parties at Dowagiac, the defendant, Oliver Ayers, visited the city of Dowagiac, and after Mabel left his home dur-

ing the summer, and having a conversation with Mabel's brother, one Glenn Bowerman, and the people contend that the defendant then told young Bowerman that if she (Mabel) swore out a warrant against him he was gone to hell. \* \* \*

"The people contend that not until the girl, Mabel, left the home of defendant and was away from his influence, and when fear was removed, did she freely and of her own accord tell the facts and the truth as it was at that time, which she now refutes.

"Now, these are some of the contentions of the people, gentlemen; they are not all of them. It is not the duty of the court to recite all of them, but it is your duty to remember all of them for yourselves, and remember when you come to deliberate upon this case."

In another portion of the charge the trial court used the following language:

"Now, the court permitted the people to show contradictory statements made by the girl, Mabel, a hostile witness whom the people were compelled to call. This was not done for the purpose of proving the offense, but for the purpose of affecting the credibility of the witness, Mabel, and you will only consider such evidence for that purpose. You should take into consideration all the evidence, all the facts and circumstances as they appear here, and as they have been unfolded here under the testimony, analyze the evidence with all of the other circumstances, measure it by the rule of common sense, by the surroundings, in the light of the environments of this girl, consider her age, her acquaintance with defendant, and in fact all of the circumstances and conditions as they appear under the evidence at the time of the alleged assault. If you believe that any witness has testified falsely to any material fact in this case, then you are at liberty to reject the testimony of such witness, as it would be evidence that such witness cannot be restrained by the obligation of his or her oath."

The trial resulted in a verdict of guilty, and the case is before us upon exceptions before sentence. There are many assignments of error, some of which we shall not find it necessary to notice.

1. By appropriate assignments of error, the question is raised whether the affidavit made by the girl, Mabel, before the warrant issued, and her testimony upon the former trial, could be received as substantive evidence of the guilt of the accused. This question has been before this court, and it has been distinctly ruled that such statements, or testimony, are not admissible as substantive proof for the purpose of convicting the accused, and that they are only competent for purposes of impeachment of the witness. *People* v. *Nichols*, 159 Mich. 355 (124 N. W. 25); *People* v. *Elco*, 131 Mich. 523 (91 N. W. 755, 94 N. W. 1069); *People* v. *Miner*, 138 Mich. 290 (101 N. W. 536).

While it appears from the record that in the admission of this testimony the trial court did not restrict it to purposes of impeachment, and failed to give respondent's second request to charge in the language there stated, we are of opinion that the court did finally, in one instance, in its charge, state the correct rule. The only criticism which could be made of the trial upon this branch of the case is that in the remarks which we have quoted, made by the court in the admission of this testimony, it would appear that it was received for purposes other than that of impeachment, and as tending to prove the substantive offense. The danger in such a case is that the jury, becoming impressed with the remarks of the court so frequently made in the admission of the testimony, may not have clearly understood the charge of the court upon that subject.

2. It will be observed from what we have said that the court permitted evidence of the statements of the girl, Mabel, made in the absence of the respondent, as testified to by the justice and Mabel's brother, without having laid any foundation for such statements. The record shows that the attention of Mabel

had not been called to these matters, and, she being a mere witness in the case and not a party, such statements were hearsay. *People* v. *Elco, supra; People* v. *Fowler,* 104 Mich. 449-453 (62 N. W. 572), and cases there cited. We think this was error.

3. After a careful reading of this entire record, we are impressed with the fact that there was no substantive proof of the commission of the crime charged against the respondent upon the trial of this case. The testimony of the girl, Mabel, was positive and direct, of his innocence. Her testimony upon the former trial at most could be received only as tending to impeach her, and could not be considered or received as substantive proof for the purpose of convicting the accused. The other independent bits of testimony of circumstances are not sufficient in our judgment to warrant submitting the case to the jury. We are of opinion that it was the duty of the court, under the state of the record, to have directed a verdict of not guilty, as requested by respondent's counsel.

A number of assignments of error relate to the argument of counsel for the prosecution before the jury. Some of this language was intemperate and improper, but will probably not be repeated should another trial take place.

Being of the opinion that there was not sufficient evidence to warrant submitting the case to the jury, and in fact no question of fact for the jury, the conviction of the respondent is set aside, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.