THE PEOPLE v. JAMES K. PERRIMAN.

*Criminal law—Information for bigamy—Amendment—Witnesses—
Indorsement of names upon information—Private attorney
assisting prosecutor—Proof of marriage—
Copy of records.*

1. The amendment of an information for bigamy by leave of the court on calling the case for trial, by changing the name of the county where the first marriage is alleged to have taken place to that of another county in the same state, is not improper, no claim. being made that such amendment necessitated a continuance to enable the respondent to go to trial safely.

2. While there are some reasons why the place as well as time of the first marriage should be given in an information for bigamy, it is apparent that the only important fact is the existence of the two marriages.

3. It is quite possible for a valid marriage to be shown with no means to show its time and place, and this is especially true of marriages in distant places.

4. While fairness requires that no needless delay should occur in placing on the information the names of known witnesses, yet it cannot be made an absolute requirement in cases of such a nature as the present, where the prosecution cannot compel attendance.

5. There is no question that the testimony of eye-witnesses to a marriage is more direct and reliable in most cases than documentary evidence, which has never been regarded as in law the best evidence.

6. A witness who swears to seeing a man and woman joined together by a marriage ceremony, performed seriously and in earnest, by a person acting in the character of a clergyman or magistrate, testifies to what is a valid marriage,. unless clearly made illegal by statute.

7. According to all rules of law, official character, whether lay or clerical, can be shown presumptively by reputation.

8. While there may' be countries where marriages are void unless solemnized by a person having actually the authority to perform them, such is not the general rule, and such is not our law.

9. A paper purporting to be a certificate of a marriage solemnized in another state, and certified by the clerk of the county to be a true and perfect copy of such certificate as the same appears from the records in his office, but which is not certified as required by the act of Congress, and does not conform to any rule of this State on the subject, is inadmissible as evidence of such alleged marriage in this State.

10. Where an attorney appointed on the request of the prosecuting attorney to assist in the prosecution of a criminal case testifies that he is acting under an agreement that the prosecutor shall pay him for his services, and that he has received no money, nor made any arrangements to receive any, from any other person, there is no rule making it necessary to exclude him.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued October 17, 1888. Decided October 26, 1888.

Respondent was convicted of bigamy, and sentenced to State prison for five years. Judgment affirmed. The facts are stated in the opinion.

*Ward & Ward,* for respondent, contended:

1. The amendment of the information changed the cause of action, and if proper at all the better practice required that a new information, properly verified, should have been filed; citing How. Stat. § 9550; *Lewis v. State,* 17 N. W. Rep. 366 (Neb.).

2. In support of the objection to indorsing names of witnesses on the information, counsel cited How. Stat. § 9549; *People v. Hall,* 48 Mich. 487.

3. The answers of Mr. Maynard left it clearly to be understood that for services already performed in the case he expected compensation from third parties, and it was error to allow him to act in the trial; citing How. Stat. §§ 551, 557; *Meister v. People,* 31 Mich. 99; *Sneed v. People,* 38 Id. 248; *Ulrich v. People,* 39 Id. 245; *People v. Hurst,* 41 Id. 328; *People v. Cline,* 44 Id. 291.

4. It was error to permit the witness Cowen to state his conclusions that a marriage took place, instead of requiring him to state what was said and done, and leave the conclusions for the jury to draw. Besides, there was better proof, and no excuse was shown for not making record proof, or calling the minister who performed the ceremony. The laws of Arkansas require a record to be kept of all marriages, and if not found

where, if in existence, it ought to be deposited, the presumption arises that it never existed; citing *Platt v. Stewart*, 10 Mich. 260; *Hall v. Kellogg*, 16 Id. 135.

*W. J. Stuart*, Prosecuting Attorney (*Stuart, Knappen & Van Arman*, of counsel), for the people.

1. The amendment of the information was within the express language of the statute of amendments; citing How. Stat. § 9537; *People v. Mott*, 34 Mich. 80; *People v. Henssler*, 48 Id. 49; *People v. Calder*, 30 Id. 85.

2. No objection to lack of reverification was made, and an objection to lack of verification is waived by not raising it until after jury are sworn; citing *Mentor v. People*, 30 Mich. 91; *Lambert v. People*, 29 Id. 71.

3. The marriage certificate alone was not the best evidence of the marriage, and standing alone was inadmissible in this case; citing *People v. Lambert*, 5 Mich. 349, 364; and it was proper to prove the marriage by the witnesses who attended it.

4. Parol evidence that the officiating minister publicly, and in the presence of other persons in attendance, in fact performed what purported to be a ceremony of marriage between the parties, who appeared to regard themselves as then married, is sufficient to establish a presumptively valid marriage, without proof of the particulars of the ceremony, or of the specific requisites of a lawful marriage ceremony according to the forms or usages or customs of such church; citing *People v. Calder*, 30 Mich. 85; *Fleming v. People*, 27 N. Y. 329.

5. Any one present at the marriage is as competent a witness as the officiating minister; citing *State v. Robbins*, 6 Ired. 23; 1 Bish. Mar. & Div. § 494, and cases cited in note.

6. Evidence that the officiating minister is a *de facto* clergyman is sufficient; citing 1 Bish. Mar. & Div. § 495.

CAMPBELL, J.   Respondent was convicted of bigamy in marrying, at Grand Rapids, one Louisa A. Love, while having another wife living, and not divorced.   The information charged the former marriage to have been had with one Roxy L. Cowen, in Izard county, Ark., at a time less than a year before the latter one, giving the date properly.   On the calling of the case, and before trial, the prosecutor had leave granted to change the name of the county in Arkansas to Fulton county.   This

was objected to, but the objection was overruled. We do not think the amendment improper. No showing or claim seems to have been made that a continuance was made necessary by it to enable respondent to go to trial safely. While there are some reasons why the place as well as time of the first marriage should be given, it is apparent that the only important fact is the existence of the two marriages. It is quite possible for a valid marriage to be shown with no means to show its time and place. This is especially true of marriages in distant places. If there has been a prior marriage, there are generally modes of proof quite satisfactory, as by eye-witnesses, when their memory may fail entirely as to the exact circumstances, without shaking their credibility. The amendment does not seem to us to be ground of reversal

It is also assigned as error that the prosecutor added the names of Robert Cowen and William Cook to the names of witnesses indorsed on the information by leave granted in court before trial, without any sufficient showing that they were not known before. To this it may be answered that no application was made for continuance on that ground. But it appears that these witnesses lived in Arkansas, and were beyond reach of process from this State, so that a knowledge of their materiality would not have insured their attendance. While fairness requires that no needless delay should occur in placing on the information the names of known witnesses, yet it cannot be made an absolute requirement in cases of such a nature as the present, where the prosecution cannot compel attendance.

Several questions relating to proof of marriage may be considered together. There is no question that the testimony of eye-witnesses to a marriage is more direct and reliable in most cases than documentary evidence, which

has never been regarded as in law the best evidence. Unless there is something to identify the parties, there is always a possibility of mistaken identity, which is avoided by direct proof by observers. And we have no doubt that a witness who swears to seeing a man and woman joined together by a marriage ceremony, performed seriously and in earnest, by a person acting in the character of a clergyman or magistrate, testifies to what is a valid marriage, unless clearly made illegal by statute. No statute of Arkansas, so far as we can discover, requires any greater proof of a valid marriage. The statute, as produced to us, seems directly to authorize marriage to be so solemnized; and, according to all rules of law, official character, whether lay or clerical, can be shown presumptively by reputation. And while there may be countries where marriages are void unless solemnized by a person having actually the authority to perform them, such is not the general rule, and such is not our law. It would be a dangerous thing to subject parties acting on the faith of a valid ceremony to have their marriages avoided by some unknown defect in the official character of the person who officiated. In the present case, no such doubt appears warranted by anything in the record. We think there was no error in receiving the testimony given concerning the license and bond. It came from the proper source, and was proved by a proper witness, and was corroborative of the testimony of the eye-witness, if it needed corroboration.

An attempt was made to show a marriage existing between respondent and another woman than Roxy Cowen at the time he married her, so as to avoid the charge that Roxy was his wife. Without considering the oral testimony offered on this subject, which appears to us to have been properly considered below on the trial, it does not seem to us that there was any error in shutting out the

certificate of that marriage, which was not certified as required by the act of Congress, and did not comform to any rule of our own on the subject. The jury do not appear to have believed the oral testimony, and we cannot review their incredulity. The court charged them very fairly on the subject.

The prosecution proved, by testimony which the jury could not have disbelieved without perverseness, that respondent was married to Roxy L. Cowen in February, 1886, and to Louisa A. Love in November, 1886. There was no way to meet this, except by invalidating one or both of these marriages. The first marriage was attacked by attempting to show one or two earlier ones, the alleged wife in one of which was not divorced. The jury did not believe the testimony on that head. An attempt was also made to show respondent's insanity. The respondent himself, his daughter, and some medical witnesses, appeared to sustain this defense. The facts positively shown by the prosecution were not controverted except by want of recollection, out of which the insanity was sought to be made out. This reliance on want of memory was not much aided by the experts, who had not much faith in its truth, and, so far as they gave opinions, did it chiefly on other grounds. Upon the purely medical questions, which were not many, the witnesses differed, and their credibility was for the jury. The testimony for respondent on these points did not give very tangible grounds in such a way as to enable other experts to test their character or tendency. The principal medical witness for the defense assumed to direct the course of most of his own examination, and to declare certain letters and other things insane acts, which the jury have as much capacity to interpret as he had, and on which their judgment was to be exercised. An examination of these letters does not to an ordinary mind indicate anything

more than a lively imagination, such as might be useful
to a person running a small show, as defendant seems to
have been; but they may have been true for anything
shown on the subject, and if not true were as possibly lies
as delusions.   The letters indicated beyond doubt that
respondent considered himself to be the husband of Roxy,
and wrote as a husband of not very extreme delicacy
might have done, and as the jury have found he did.

It was going as far as justice required to let the ques-
tion of insanity at the time of the first marriage go to
the jury at all, and, as the case stood, we do not think
the expressions of the trial judge concerning expert testi-
mony require any censure or animadversion.   There was
nothing in the charge to prevent the jury from finding
respondent insane if they believed he was, but they evi-
dently had no such idea, and it was for them to say.

Objection was made to the employment of Mr. Maynard
to aid the prosecution.   He was fully examined, and there
was nothing which under our rulings made it necessary
to exclude him.

There was complaint made of some of Mr. Maynard's
language in addressing the jury.   The court in charging
the jury gave them all the instruction necessary upon
the subject; and there is not only no certainty that he
made the remarks complained of, but the caution given by
the judge when the matter was brought to his attention
was fully sufficient to rectify it if he had gone as far as
was claimed.   There was abundant evidence to justify
Mr. Maynard's belief in defendant's bigamous proclivities,
and we do not see any reason to criticise the action of
the court in disposing of the objection, and confining the
jury to the specific issues before them.

There are some other objections presented by the able
and zealous counsel for the defense, but none of them
appear to us important enough to be noticed further.

They come within familiar rules. The judge who tried the case did so with great fairness, and his rulings contain nothing that can be complained of by respondent.

The judgment must be affirmed.

The other Justices concurred.