PEOPLE *v.* GOODRODE.

1. POLYGAMY—MARRIAGE—EVIDENCE—NONPREJUDICIAL ERROR.
   Where, on a trial for polygamy, respondent's testimony and that of his alleged first wife showed the performance of a marriage ceremony between them, followed by their living together as husband and wife, a valid marriage was shown, and hearsay testimony, introduced for the purpose of proving the marriage, was not prejudicial error.

2. CRIMINAL LAW—WITNESSES—DOCUMENTS—CONSTITUTION.
   The provision of the Constitution, securing to the defendant in a criminal prosecution the right to be confronted with the witnesses against him, does not permit the admission of a certificate of a county clerk that, after diligent search, he is unable to find any record of a marriage between certain persons, for the purpose of showing that the marriage did not take place.

3. POLYGAMY—INSTRUCTIONS—EVIDENCE.
   In a prosecution for polygamy, where there was no evidence that the alleged former marriage of respondent's first wife was a sham marriage, it was error for the court to charge that, if the parties "merely went through a sham ceremony, then it was no marriage and no defense."

4. MARRIAGE—WITNESSES—CORRECTING CHARGE.

In a criminal prosecution the court instructed the jury that two witnesses were necessary to a valid marriage, and then that "it appears from the testimony that but one witness was present." *Held,* that a subsequent attempt to correct the charge by eliminating, "it appears from the testimony that but one witness was present," did not cure the error, as it still left the jury to believe that two witnesses were necessary to constitute a valid marriage.

5. EVIDENCE—ADMISSIBILITY AND WEIGHT.

It is the province of the court to determine what testimony is admissible, and of the jury to determine the weight to be given it.

Exceptions before judgment from Van Buren; Carr, J. Submitted November 21, 1902. (Docket No. 222.) Decided March 30, 1903.

Nelson R. Goodrode was convicted of polygamy. Reversed.

*Hammond, Hammond & Donovan,* for appellant.

*Horace M. Oren,* Attorney General, and *David Anderson,* Prosecuting Attorney, for the people.

MOORE, J. The information in this case charges the respondent with polygamy; that on the 24th day of March, 1892, and in the county of Fulton, State of Ohio, he married one Anna Carpenter; and on the 20th day of July, 1896, he married one Agnes Cleary, not having at that time obtained a divorce from Anna Carpenter. A trial was had, and the respondent was found guilty.

Error is assigned upon the admission of testimony introduced for the purpose of proving the marriage of March 24, 1892. The testimony of Mr. Bloomer, based upon what the judge of probate told him, was improperly admitted. It was hearsay. But, inasmuch as the testimony of the respondent and of Anna Carpenter showed the performance of a marriage ceremony between them on or about March 24, 1892, followed by their living together

as husband and wife, we think a valid marriage was shown (see *People* v. *Lambert*, 5 Mich. 367 [72 Am. Dec. 49]; *People* v. *Calder*, 30 Mich. 85; *Hutchins* v. *Kimmell*, 31 Mich. 126 [18 Am. Rep. 164]; *People* v. *Girdler*, 65 Mich. 70 [31 N. W. 624]; *People* v. *Perriman*, 72 Mich. 184 [40 N. W. 425]; *People* v. *Imes*, 110 Mich. 250 [68 N. W. 157]), and the error was not prejudicial.

It was the claim of the respondent that when he married Agnes Cleary, in 1896, he supposed the woman he married in March, 1892, was dead, and that there was no legal impediment to his marriage, and did not learn there was until 1900, when he at once filed a bill for divorce from Anna Carpenter, and obtained a decree of divorce. It is also his claim that, when he married Anna Carpenter, she then had a lawful husband living.

The record discloses this woman had been married three or four times before the marriage ceremony in Ohio in 1892. Prior to 1886 she was reputed to have married one Van Lair. Upon the trial the people introduced as a witness Mr. Williams. He testified upon cross-examination that he married Angeline Carpenter in 1886 or 1887; that before then she had been married to one Fuller; that, supposing Fuller was dead, Mr. Williams married her; that he afterwards learned Fuller was alive; that he advanced the money, and Mrs. Fuller obtained a divorce from Fuller; that at this time she was keeping house for Mr. Williams as his housekeeper, but not as his wife, and continued to do so for two or three months after the divorce; that, as he did not deem his marriage with her was legal, he never got a divorce from her. He also testified that afterwards he understood she married one William Miller at Saginaw, and still later married respondent. Anna Carpenter was sworn as a witness on the part of the respondent, who testified that, before marrying Goodrode, she married Miller in Saginaw, in the presence of witnesses, by a man who was represented as a minister, and she and Miller lived together, and were not divorced when she married Goodrode.

For the purpose of rebutting this testimony, the people were allowed, against the objection of the respondent, to introduce in evidence the following paper:

"STATE OF MICHIGAN, }
  County of Saginaw.  } ss.

"I, R. Crowfoot, county clerk and clerk of the circuit court, having a seal, do hereby certify that after diligent search of the records of marriages of said county, under my control, I am unable to find any record of a marriage between William Miller and Anna or Angeline Carpenter, Fuller, or Williams.

"Witness my hand and seal of the court of Saginaw, this 9th day of April, 1902.

[Signed]    "R. CROWFOOT,
                    "County Clerk.

"[Seal of the circuit court of Saginaw county, Michigan.]"

As to this part of respondent's defense the court charged the jury, among other things:

"It is claimed by the respondent that this marriage to Anna Carpenter was void and illegal for the reason that she was at the time of said marriage the wife of one William Miller. I charge you that this claim is no defense to respondent, unless the evidence in the case shows this claimed marriage to William Miller to have been a legal one. If Anna Carpenter and William Miller merely went through a sham ceremony, then it was no marriage, and would be no defense. Under the laws of this State, in the solemnization of marriage no particular form is necessary, except that the parties shall solemnly declare, in the presence of the magistrate or minister and in the presence of the attending witnesses, that they take 'each other as husband and wife; and in every case there must be at least two witnesses besides the magistrate or minister present at the ceremony. If any ceremony was performed at all between William Miller and Anna Carpenter, it appears from the testimony that but one witness was present, and it further appears that this marriage was performed, if at all, in Saginaw, and it appears from the certificate of the county clerk of Saginaw county that no record of such a marriage is found in that county. You are at liberty to consider this as testimony to show that the marriage claimed to have been had between William Miller and

Anna Carpenter was not a valid marriage, and, if it was not a valid marriage, then it is no defense to respondent.

"*Mr. Anderson:* Now, if your honor please, there is one place in there that should be changed, where it says, 'It appears from the testimony that but one witness was present.' I think it would be an error to leave that little statement in, and would like to have that changed.

"*The Court:* Well, that statement, on the prosecutor's statement, is eliminated from this request."

Again:

"I think I am safe in saying to you, if this Mrs. Carpenter and this man William Miller honestly contracted a marriage, and agreed to take each other as husband and wife, and lived together as such, and were known as such in the community, then that would be in the law a marriage. But that is for you to say, and in considering that point you will consider the evidence of the kind of ceremony. In passing upon that you will consider the fact that the name of the minister—that is, in weighing her testimony—is not repeated here, and the fact that there is no record of the marriage. All these things you may consider as bearing upon the question of good faith of that marriage."

The respondent insists that the certificate of the clerk of Saginaw county was not admissible, as the accused was entitled to be confronted with the witnesses against him. The people say the testimony was admissible; citing *People* v. *Jones,* 24 Mich. 215. A reference to that case will show it is easily distinguishable from this one. In that case the facts proven were essentially documentary, and of an affirmative character. In the opinion the court used the following language:

"We do not think the provision of the Constitution securing to the defendant in a criminal prosecution the right 'to be confronted with the witnesses against him' can apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially authenticated in some way, especially when the fact to be proved comes up collaterally, as in the present case."

In the case at bar the question to be decided was whether

or not Anna Carpenter and William Miller had in fact been married, as she testified. The fact to be proven did not depend upon the existence of documents, but depended, in this case, upon whether or not a marriage ceremony was performed, as testified to by Anna Carpenter. This could best be shown by the persons who are said to have been present, as the contracting parties, the minister, or any one else who might have been present.

In *People* v. *Lambert*, 5 Mich. 349 (72 Am. Dec. 49), it was held that a certificate of marriage signed only by the minister or officiating officer, or the record thereof, cannot avail as evidence of the marriage in criminal proceedings, where the defendant is entitled to be confronted by the witnesses against him. Section 28, art. 6, of the Constitution, provides that the accused is entitled to be confronted with the witnesses against him. This is supplemented by the statute (3 Comp. Laws, § 11796), which provides that he shall have the right to meet the witnesses face to face who are produced against him. The people were allowed in this case to show that no return of the marriage of Anna Carpenter to William Miller had been made to the office of the county clerk, not by producing the clerk or some person having knowledge of the fact, who might be cross-examined as to how diligent a search he had made, but by the introduction of a certificate from him of the fact. This was contrary to the constitutional provision, as well as the statute. See *People* v. *Dow*, 64 Mich. 717 (31 N. W. 597, 8 Am. St. Rep. 873).

I do not think the certificate was admissible for another reason. There was positive testimony of the marriage ceremony, and that the parties were reputed to be husband and wife. It was sought to discredit this testimony in the manner indicated. We do not think it tends to do so, but the logical inference would be that the person whose duty it was to make the return had failed to make it. A conviction of so serious a crime as bigamy ought not to be predicated upon an inference of so doubtful a character.

There was no occasion for the trial judge to say to the

jury, "If Anna Carpenter and William Miller merely went through a sham ceremony, then it was no marriage, and it would be no defense." It was the claim of the people that no marriage in fact was performed between these persons, while Anna Carpenter testified that the marriage ceremony was performed by a minister in the presence of witnesses. Her claim was either true or it was false. There is no testimony in the case that, if a marriage ceremony was performed, it was a sham ceremony, and the charge was calculated to prejudice the jury.

Again, when the judge undertook, at the suggestion of the prosecuting attorney, to correct his charge by saying, "Well, that statement, on the prosecutor's statement, is eliminated from this request," he did not correct the error in the charge. He had told the jury that, to constitute a valid marriage, there must be at least two witnesses besides the magistrate or minister present at the ceremony. He then instructed them, "It appears from the testimony that but one witness was present,"—in effect telling them no valid marriage was performed in Saginaw. While the jury may have understood that the court recalled what he had told them about the testimony showing there was but one witness present, it did not correct what he had charged them was necessary to constitute a valid marriage.

The charge of the court was calculated to impress the jury with the idea that Anna Carpenter's testimony was not entitled to much credence. It was for the judge to say what testimony was admissible, but it should have been left with the jury to say what weight should be given it.

The conviction should be set aside, and a new trial ordered.

HOOKER, C. J., and CARPENTER, J., concurred with MOORE, J. MONTGOMERY, J., concurred in the result. GRANT, J., took no part in the decision.