[No. 25829.   Department One.   November 19, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
SANG, *Appellant*.[1]

[1]Reported in 51 P. (2d) 414.

*John F. Dore, James F. O'Brien,* and *Stephen J. O'Brien,* for appellant.

*Harry H. Johnston, J. W. Selden,* and *A. M. Ursich,* for respondent.

MITCHELL, J.—A grand jury in Pierce county, while engaged in investigating charges of graft and payment of protection money to public officers, examined Charles Sang, under oath, as a witness. Thereafter, January 28, 1935, the grand jury, by indictment, accused him of the crime of perjury in the first degree, in that, before the grand jury, he testified in substance and in fact as follows:

"That I never saw or talked with Holmes Eastwood before; that I never worked back of the cage; that I never sold lottery tickets at the Nanking, located at 1338½ Broadway, in the months of June or July of 1934, or at any other time; and that I never was upstairs in the Nanking, in the months of June or July of 1934, or at any other time; and that I never paid any money to Veto Cuttone or to any other person for protection money; and that I never was connected with the Nanking, located at 1338½ Broadway, Tacoma; and that I never gambled there; and that I never saw gambling there; and that I didn't know that the Nanking, located at 1338½ Broadway, Tacoma, was a gambling house up to about August 1, 1934."

It was further alleged in the indictment that the testimony related to material matters and was false and untrue, and feloniously, wilfully, knowingly and intentionally given.

The defendant was found guilty as charged, and has appealed from a judgment and sentence on the verdict.

It is claimed that, because of prejudicial misconduct on the part of the deputy prosecuting attorneys in the trial, the appellant was prevented from

having a fair trial. In the opening statement to the trial jury, made by Mr. Ursich, a deputy prosecuting attorney, the following occurred:

"The evidence will show that for a long time this man has been connected with the Nanking in Tacoma and other places, and that he has a general reputation as a gambler—(interrupted) MR. DORE: I move that the statement be stricken and the jury instructed to disregard it. THE COURT: Counsel may proceed. MR. DORE: Note an exception. THE COURT: Allowed."

It is difficult to perceive any justifiable purpose in saying the state would show that the defendant "has a *general reputation* as a gambler,"—a procedure not allowed the state in its case in chief. Surely, the conduct was prejudicial, especially as the impression created by it was allowed to remain in the case, notwithstanding appeal to the trial court.

■ The appellant is Chinese. In the arguments to the jury, Mr. Burmeister, a deputy prosecuting attorney, in closing for the state, and upon speaking of the value of the testimony of the different witnesses, some of whom were white persons and others colored persons, declared:

"But I do say this: you can take into consideration the Chinese traits. The Chinese are natural gamblers; no question about that. It is a trait. MR. DORE: I move that the jury be instructed to disregard that statement as being prejudicial. He cannot try any man on his race or creed. I will ask that the jury be instructed to disregard the remark as prejudicial. THE COURT: The motion will be denied."

In effect, the jury was thus urged to infer that the defendant's testimony at the trial, that he had not in any way been connected with the Nanking at 1338½ Broadway (claimed to be a gambling place), never sold lottery tickets there and never saw or talked with Holmes Eastwood, constituted perjury because of the attorney's advice and assertion:

"But I do say this: you can take into consideration the Chinese traits. The Chinese are natural gamblers; no question about that. It is a trait."

The substance of it was that the jury should find that the defendant was a gambler because he belongs to a race all of whom are gamblers, as a stepping-stone to a verdict that defendant was guilty of perjury in the first degree as charged. There was no proof of such racial trait, and besides, a defendant in a criminal trial is entitled to a fair trial, whatever, if any, may be his racial traits.

The case is substantially like *State v. Carr*, 160 Wash. 74, 294 Pac. 1013, wherein a conviction by a jury was set aside because of misconduct on the part of the attorney for the prosecution similar, in effect, to that found here in the opening statement and closing argument to the jury. Some of our other cases discussing the prejudicial effect of misconduct of a similar character are: *State v. Tweedy*, 165 Wash. 281, 5 P. (2d) 335, and *State v. Devlin*, 145 Wash. 44, 258 Pac. 826.

As to one feature of this assignment, the reasoning and conclusion in *Fontanello v. United States* (C. C. A.), 19 F. (2d) 921, are peculiarly persuasive. That was a case in which Fontanello and other Italians were convicted of the illicit distillation of spirits. On appeal, they relied for reversal on the misconduct of the district attorney in his closing argument to the jury in which he said:

" 'These men are Italians. We welcome them to our country. They should obey our laws. It is a matter of everyday knowledge that the majority of people in King county running stills are of the same nationality; that whenever we have a still case in this court in a great many cases we find the last name similar to these: Fontanello, Rocco, and Pinola. Now look at the information in this case, Dominick Fontanello,

Tony Fontanello, Paulo Rocco, John Pinola, and 400 per cent of them foreign population.' "

The defendants excepted to the remarks of the district attorney and asked that the jury be instructed to disregard them. The court allowed an exception, but the record did not show if the jury were instructed to disregard the remarks. In reversing the judgment, the court said:

"It is beyond question that the statements of the district attorney were unjustifiable and censurable. As an officer of the court he signally failed in his duty to act in the interest of justice. His remarks were plainly unwarranted and were objectionable on two grounds. They tended to create race prejudice, and they conveyed the imputation that the accused belonged to a class of persons peculiarly addicted to the illicit distillation of liquors. Remarks such as these, which are not withdrawn, when brought to the attention of court and counsel constitute prejudicial error, which requires reversal. *Sischo v. United States* (C. C. A.) 296 F. 696; *Luterman v. United States* (C. C. A.) 281 F. 374; *Fish v. United States* (C. C. A.) 215 F. 544, L. R. A. 1915A, 809.''

The matters complained of in this assignment in the present case were prejudicial and constituted reversible error.

■ Abundant evidence was introduced to the effect that appellant had been introduced to, and was acquainted with, Holmes Eastwood; that he had met him several times at the Nanking while the appellant was assisting in conducting gambling games at that place. It is, however, assigned that the court erred in instructing the jury concerning the alleged statement of the appellant before the grand jury "that he never saw or talked with Holmes Eastwood," which allegation is traversed in the indictment by the allegation that he had in fact talked with Holmes Eastwood, the contention being, upon this assignment of

error, that the matter is immaterial and too indefinite upon which to base a charge of perjury.

Upon the record, it appears there was no lack of definiteness as to the time, place and circumstances involved in the inquiry. Also, we are satisfied the subject-matter was material. It related to a legitimate inquiry before a grand jury—an inquisitorial body—and was both proper and material.

Any reasonable inquiry made or information sought by a grand jury engaged in investigating alleged crimes is entitled to the most open and candid respect, and, if a false answer or information given tends in any manner to hinder or delay the inquiry, it is a material matter. *Smith v. State,* 91 Ark. 200, 120 S. W. 985; *Carroll v. United States,* 16 F. (2d) 951.

Surely, the rule is as strong and clear in investigations by grand jury as before trial juries, where, as stated in *State v. Carpenter,* 130 Wash. 23, 225 Pac. 654, it was said that the test of materiality is whether the statement could have influenced the tribunal upon the question at issue before it. This assignment of error is without substantial merit.

■ The appellant took the witness stand in his own behalf, and it is claimed the court erred in allowing the state, in its cross-examination of the appellant, to bring out, over his objection, the fact that his wife was a white person, and to attempt to show that, at one time, a woman by the name of Stonequist lived in the house with them. The appellant testified in chief that he was a married man, which testimony, in our opinion, justified the cross-examination on that point.

Concerning the attempt, on cross-examination, to show that a woman by the name of Stonequist had lived at the home of appellant and his wife, a question in that direction was withdrawn, and, while it

is unlikely any controversy upon that subject will arise in a new trial, it may be stated that the contention on the part of appellant was that the matter was prejudicial, because the Stonequist woman had been murdered in Tacoma and that her murderer had never been found. There is, however, no proof of that sort in this record, nor any showing that, if the fact be as claimed on behalf of the appellant, any juror had ever heard of it.

Another feature with reference to this particular matter is mentioned in appellant's brief, claiming that error was committed by the fact of asking such question, as if the state intended to open up this matter, but, upon objection on behalf of the appellant, the question was withdrawn, and the court immediately instructed the jury: "The question, members of the jury, is withdrawn. You are to disregard the question or any inference from the question."

Other minor assignments of error, all of which have been considered, are without substantial merit.

Reversed, and remanded with directions to grant a new trial.

BEALS, TOLMAN, STEINERT, and GERAGHTY, JJ., concur.