[No. 26643.   Department Two.   July 19, 1937.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN
HATUPIN, *Appellant*.[1]

[1]Reported in 70 P. (2d) 1039.

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for appellant.

*B. Gray Warner (Paul Coughlin,* of counsel), for respondent.

BEALS, J. — The defendant, John Hatupin, was charged with the crime of assault in the second degree, the information alleging that, in King county, on or about March 17, 1935, the defendant inflicted grievous bodily harm upon the person of one Norman Bennett, by cutting and stabbing him with a pocket knife, and beating and wounding him with a wrench.

Defendant was first tried during the month of July, 1935, the jury returning a verdict of guilty. During the month of November following, defendant's motion for a new trial was granted, and December 14th following the cause was set down for trial for January 6, 1936. Two days before the date fixed for the trial, on ·defendant's application, a continuance was granted to February 13th, when the matter was again continued to March 17th. On that date, another continuance was granted to May 25th, when the case was continued to July 23d, on which date the case was set for September 8th. His attorney having formally withdrawn, the defendant appeared on the day fixed for the trial, and upon explaining that he had no counsel, the cause was again stricken from the trial calendar.

December 19th, the case was set for January 4, 1937, on which day defendant was tried. The jury returned a verdict of guilty, and defendant's motion for new trial having been denied, a judgment of guilty was entered, and a sentence of confinement in the penitentiary for not more than ten years was imposed. From this judgment and sentence, defendant has appealed.

Error is assigned, first, upon alleged prejudicial misconduct of the prosecuting attorney, based upon state-

ments made by him in his argument to the jury; second, upon the refusal of the trial court to grant a further continuance of the case, and in appointing counsel to represent appellant, and directing that the trial immediately proceed; third, upon two instructions of the court; and fourth, upon the imposition of sentence upon appellant, in that the sentence imposed violated both the Federal and the state constitutions.

■ We shall first discuss appellant's second assignment of error. As above stated, appellant's trial was continued on several different occasions. The record shows that at least two of these continuances were at his request. When on September 8, 1936, appellant appeared before the court in person without counsel, the cause was stricken from the calendar, the judge presiding instructing appellant to employ an attorney. December 19th following, the case was set for trial for January 4th. Of this fact, appellant was advised by letter, dated the day the case was set for trial. Appellant denies that he received this letter, but he admits receiving a second letter of similar tenor, mailed December 30th. On the morning set for the trial, appellant appeared with an attorney, who refused to represent appellant unless a further continuance be granted. The court denied the application for a continuance and appointed two able and experienced lawyers to represent appellant. The trial opened at one-thirty o'clock in the afternoon of January 4, 1937, appellant being represented by the two counsel appointed by the court.

Appellant contends that the trial court abused its discretion in refusing to grant him a further continuance and in directing that the case proceed to trial under the circumstances above set forth.

The record shows that, on September 8th, when appellant appeared before the court on the day set for

his trial, stating that he had no counsel, the court continued the case, and instructed appellant to employ an attorney. Appellant thereafter never requested that the court assign counsel to represent him, but evidently failed to follow the court's instructions. Appellant offers no excuse for his failure to retain counsel or to request that counsel be appointed to represent him if he was unable to procure counsel of his own choice. It must be held that appellant was bound to know that his case would be again set for trial, and he admits receiving the notice of December 30th informing him that the action would be called for trial January 4th following.

Appellant had received the utmost consideration from the court, and clearly was entitled to no further grace. It cannot be held that, in designating two able and experienced members of the bar to represent appellant, and in calling the case for trial on the afternoon of the day for which it was set, the court abused its discretion. Appellant was at liberty on bail while awaiting his trial and had every opportunity to obtain counsel to represent him. The court properly ruled that appellant's trial should not be further delayed, and it clearly appears that any prejudice which appellant may have suffered was due directly to his own fault and neglect.

Appellant contends that, by reason of certain statements made by the prosecuting attorney in the course of his closing argument to the jury, appellant was deprived of his right to a fair trial. It appears from the statement of facts that there was considerable dispute over some phases of the facts of the case. Appellant took the stand as a witness on his own behalf, and during the cross-examination of appellant, he was asked where he was born, which question he answered: "I was born in the old country." On being further

questioned as to what old country he referred to, appellant answered, "Greece." The cross-examination then proceded along other lines.

One of appellant's counsel, in the course of his argument to the jury, used the following language:

"There was one thing that Mr. Coughlin did in the course of this trial that was unfair to the defendant. You will remember that Mr. Coughlin asked Mr. Hatupin, on cross-examination, where he was born and when Mr. Hatupin answered that he was born in the old country, Mr. Coughlin went on to ask him, 'what old county?' and Mr. Hatupin told him it was Greece. We have long had a rule in our law that every person is entitled to the same fair trial, regardless of race or religion. Mr. Coughlin asked those questions in order to attempt to prejudice you men and women against the defendant."

In his closing argument to the jury, counsel for the state answered this argument as follows:

"Mr. Agnew has accused me of conducting my part in this trial in a manner unfair to the defendant. He has said that I was unfair in several respects. One of these, he says, was when I questioned Mr. Hatupin about his nationality. He claims I did this in order to prejudice you against the defendant. I deny that. I asked Mr. Hatupin about his race because I thought it was material to the case. I believe the jurors can better estimate a witness if they know his background. There are, I think, such things as racial traits. There are certain people who are more likely than others to lose their tempers and in their excitement be more likely to use a knife in an argument."

Appellant contends that the argument of counsel for the state was so unfair and prejudicial as to entitle him to a new trial.

It cannot be held that the questions above quoted and propounded to appellant on his cross-examination were improper. Indeed, neither question was objected to. The trial court has a wide discretion in the con-

duct of cross-examination of witnesses on a criminal trial, and in this instance appellant did not even invoke the exercise of that discretion on his own behalf. Appellant's counsel, instead of objecting to the questions when asked, if he believed them improper, in his argument to the jury charged counsel for the prosecution with unfair tactics and an attempt to prejudice the jury in asking appellant where he was born. Appellant's counsel thus invited an answer to his argument, and while the last sentence above quoted from the address of the prosecuting attorney was an improper argument, it must be held that it was, to a great extent, invited by the argument of appellant's counsel. *State v. Engstrom,* 86 Wash. 499, 150 Pac. 1173; *State v. Benton,* 150 Wash. 479, 273 Pac. 731; *State v. Lynch,* 176 Wash. 349, 29 P. (2d) 393.

It does not appear that, in his opening argument, counsel for the state had referred to the fact that appellant had testified that he was born in Greece. The matter was first referred to by counsel for appellant. Appellant's counsel did not object to the answering argument of the prosecuting attorney, nor ask that the jury be instructed that the argument was improper and should be disregarded.

While it has been held that one accused of crime may have been so prejudiced by the conduct of counsel for the state that a new trial should be granted, notwithstanding the fact that the conduct complained of was not objected to at the time, this case does not fall within that rule. It belongs rather in the group of cases of which *State v. Kingsbury,* 147 Wash. 426, 266 Pac. 174, is an example. In the case cited, we said:

"There is a further contention that the judgment should be reversed because of misconduct of the deputy prosecuting attorney in his argument to the jury. This argument is made a part of the statement of facts certified by the trial court. While the remarks now com-

plained of went decisively beyond the bounds of legitimate argument, it cannot be said that the misconduct was so flagrant that it could not have been cured by an instruction to the jury. No objection was made to the argument at the time it was delivered and the trial court was not requested to instruct the jury to disregard it. In *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942, it was said:

" 'Misconduct of counsel cannot be urged as error unless the trial court was requested to correct it by instructing the jury to disregard the same and an exception taken to the court's refusal so to do, unless, as in the case of *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486, the misconduct was so flagrant that no instruction would cure it.' "

In this connection, appellant relies upon the opinion of this court in the case of *State v. Sang,* 184 Wash. 444, 51 P. (2d) 414. In the case cited, a prosecution for perjury, counsel for the state, in his opening statement, referred to the fact that the defendant had a general reputation as a gambler. Defendant's counsel promptly moved that this statement be stricken and the jury instructed to disregard it. The court refused to strike the statement, to which the defendant noted an exception. After the close of the evidence, counsel for the state, in his closing argument, stated that the Chinese are natural gamblers, to which statement and others of a similar tenor the defendant's attorney objected and moved that the jury be instructed to disregard such arguments. This motion the court denied. This court held that the matters referred to were prejudicial, and constituted reversible error. It must be noted, however, that, in the case cited, the defendant's counsel promptly objected to the improper statements, and moved that the jury be instructed to disregard the same, which motions the court overruled.

In the case at bar, appellant's trial counsel failed to object to the cross-examination above set forth, and

then on his argument to the jury contended that, in asking the questions, counsel for the prosecution had been unfair and had sought to arouse prejudice in the minds of the jury against appellant. Appellant, having chosen this line of defense and counter-attack, cannot complain of the answer made by counsel for the state, particularly in view of the fact that no motion was made that the jury be instructed to disregard so much of the prosecuting attorney's argument as was clearly improper.

Appellant next complains of two instructions given by the trial court. In the first of these instructions, the court defined assault in the third degree (of which offense appellant was not convicted), instructing the jury that, while the infliction of grievous bodily harm is an element of the crime of assault in the second degree, no such degree of injury is necessary to sustain a verdict of guilty of assault in the third degree. Appellant contends that, in this instruction, the court should also have referred to the fact that, to support a verdict of guilty of assault in the second degree, the grievous bodily harm must have been willfully inflicted.

By one of the instructions given, the court correctly defined assault in the second degree, using the word "willfully." By another instruction, the jury were told that, to convict appellant of the crime charged, the state must prove beyond a reasonable doubt "that on or about the 17th day of March, 1935, this defendant, J. Hatupin, willfully did assault one Norman Bennett," etc. By still another instruction, the jury were told that the words "to willfully inflict grievous bodily harm" mean just what they say, and that one who assaults another without any intent to inflict grievous bodily harm, but unintentionally does so, is not guilty of the crime of assault in the second degree. By the

instructions referred to, and of which appellant does not complain, the jury were correctly instructed, and the omission of the word "willfully" from the instruction of which appellant complains, if error at all, in view of the other instructions given, was clearly error without prejudice.

■ Appellant complains of instruction No. 8 given by the trial court, arguing that the same does not correctly define self-defense or advise the jury concerning the circumstances under which one is justified in using force while believing that he is threatened with bodily injury. By instruction No. 9, the court properly instructed the jury as to the law governing the principle of self-defense which appellant argues was inadequately covered by instruction No. 8. Considered as a whole, the instructions correctly stated the law, and we find no error therein of which appellant can complain.

■ Finally, appellant complains because he was sentenced in accordance with the provisions of § 2, chapter 114, Laws of 1935, p. 309 (Rem. Rev. Stat. (Sup.), § 10249-2 [P. C. § 4503-32]). Counsel for appellant cite the opinion of the supreme court of the United States in the case of *Lindsey v. State,* 301 U. S. 397, 57 S. Ct. 787, and earnestly contend that, under this decision, not only was the sentence imposed upon appellant without warrant of law, but that no sentence whatever can now be imposed pursuant to the judgment of guilty.

As the offense of which appellant was convicted was committed March 17, 1935, it is clear that, under the opinion of the supreme court of the United States above referred to, the sentence imposed upon appellant was erroneous. *State v. Hanlen, ante* p. 563, 69 P. (2d) 806. Rem. Rev. Stat., § 2414 [P. C. § 8759], being § 162, chapter 249, Laws of 1909, p. 936, defines

assault in the second degree, and provides that, any person guilty of the offense defined shall

". . . be punished by imprisonment in the state penitentiary for not more than ten years or by fine of not more than one thousand dollars, or by both."

The sentence imposed upon appellant conforms to the maximum term provided by this section, though it failed to fix a minimum.

We find no merit in appellant's contention that no sentence whatever may now be imposed upon him. Under the decision of this court in the case of *State v. Hanlen, supra,* appellant may be punished for the offense of which he has been convicted. The sentence imposed upon appellant, however, does not comply with the law, and that portion of the judgment sentencing appellant to the penitentiary is set aside, and the cause is remanded, with directions to re-sentence appellant, in accordance with law, fixing both the maximum and minimum of the term of imprisonment to be served by him.

STEINERT, C. J., HOLCOMB, GERAGHTY, and ROBINSON, JJ., concur.